IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VANCE A. EASLEY,

      Petitioner,

   v.                              Case No.  2:03-CV-460
                                         JUDGE FROST
                                       Magistrate Judge KING

PAT HURLEY, Warden,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's reply, and the exhibits of the parties.[1]  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## I. PROCEDURAL HISTORY

This case involves petitioner's December 6, 2000, convictions in the Franklin County Court of Common Pleas on murder, in violation of O.R.C. §2903.02, with a firearm specification, and having a weapon while under disability, in violation of O.R.C. §2923.13. The facts are summarized by the Tenth District Court of Appeals as follows:

---

[1] On April 5, 2004, proceedings in this action were stayed so that petitioner could exhaust state court remedies.  *See* Doc. Nos. 16, 17.  On June 14, 2005, proceedings were reactivated at petitioner's request.  Doc. No. 30.  On August 1, 2005, respondent filed the Return of Writ.  Doc. Nos. 35, 37-38.  On August 19, 2005, petitioner filed his reply.  Doc. No. 41.

Defendant's convictions arise out of a shooting which occurred at approximately 12:30 a.m., on December 19, 1999, in Columbus, Ohio, and which resulted in the death of Raymond Brock.

According to the testimony of Brock's friend, Neroy Carter, the events surrounding the shooting were as follows: Carter and Brock had spent most of the day at Brock's apartment watching football on television. At approximately 11:15 p.m., Brock's girlfriend, Jennifer Gaudette, arrived home from work. Shortly thereafter, Gaudette gave Brock $10 and asked him if he and Carter would walk to the corner carryout to get her a sandwich and some beer for themselves. Brock agreed, and he and Carter left for the carryout.

As Carter and Brock approached the carryout, they ran into defendant, who, Carter testified, he knew at the time only by the nickname "Ease." Defendant was accompanied by several other people, one of whom Carter knew as "Santino." Carter further testified that he had told Brock earlier in the day that he wanted to avoid defendant because he still owed defendant $10 on a $20 bet he had lost, defendant was pressing him for payment, and he did not have the money.

According to Carter, defendant confronted him about the $10 he owed him. The two men argued and defendant pulled a black revolver from under his shirt. However, after pulling the gun, defendant indicated that he would settle the matter without his gun and placed it on top of a nearby car. With Brock a short distance away, Carter and defendant engaged in a brief fight, which ended with defendant on the ground and Carter standing over him. As Carter stood over defendant, he saw Santino pull a black semi-automatic pistol from under his shirt and come toward him. Upon seeing Santino coming at him with a gun, Carter took off running. Carter ran to the carryout and told the clerk to call the police.

As Carter waited in the carryout, he heard two gunshots. Upon hearing the gunshots, Carter ran back outside to see what was happening. When he exited the carryout, Carter saw Brock staggering towards him holding his side. As the two men approached one another, Brock told Carter that he had been shot and then fell into Carter's arms. According to Carter, as he attempted to comfort Brock, Brock stated, "Ease shot me."

Columbus Police Officer Eric Babcock also testified at defendant's trial. According to Officer Babcock, he was dispatched to the scene in response to a telephone call reporting a shooting. Officer Babcock

2

arrived on the scene within minutes of the shooting and found Brock lying on the front steps of an apartment building. As Officer Babcock approached Brock, Brock stated that he had been shot. Officer Babcock then asked Brock who had shot him and Brock "yelled *** 'Ease did it.'" Because Officer Babcock did not understand Brock's use of the word "Ease," he asked Brock to repeat himself several times. Finally, Brock stated, "Easley did it," and only then did Officer Babcock understand that Brock had been using a nickname to describe someone named Easley. With Carter's help, defendant was arrested a short time later in a different section of the apartment complex where the shooting occurred.

On March 6, 2000, defendant was indicted on one count of murder with a gun specification, and one count of having a weapon while under a disability. By agreement of the parties, the weapon under a disability charge was tried to the court, with the verdict thereon deferred until after the conclusion of a jury trial on the murder charge.

Beginning on September 18, 2000, defendant was tried before a jury on the single count of murder. At the close of the state's case and again at the close of all the evidence defendant moved for an acquittal pursuant to Crim.R. 29. Both motions were overruled by the court.

At approximately 3:30 p.m., on December 4, 2000, the jury began its deliberations. At approximately 11:30 a.m., on December 5, 2000, the jury notified the trial court that it was deadlocked. With the agreement of the parties, the trial court reminded the jury that unanimity was required and sent the jury back for further deliberations. Sometime later that same afternoon, the jury again notified the court that it was unable to reach a unanimous verdict. The trial court then gave a "Howard charge" to the jury and sent the jury back for further deliberations. Early on the morning of December 6, 2000, the jury returned a verdict of guilty on the murder count. The trial court then announced that it was finding defendant guilty of having a weapon under disability.

One week later, the trial court sentenced defendant to an indefinite prison term of fifteen years to life on the murder charge, three years on the gun specification, and twelve months on the weapons under a disability charge, and ordered that the sentences for the gun specification and the weapon under a disability conviction be served consecutively to the sentence for murder.

3

Exhibit 2 to Return of Writ.  Still represented by the public defender, petitioner filed a timely appeal

of his convictions and sentence to the Tenth District Court of Appeals.  He asserted the following

assignments of error:

> 1. The court erred in overruling appellant's motion for judgment of
> acquittal pursuant to Crim.R. 29, where the evidence was not
> sufficient to meet the elements of the offense and where the
> subsequent jury verdict was contrary to the manifest weight of the
> evidence, all in violation of due process of law guaranteed by the
> Fifth and Fourteenth Amendments to the United States Constitution.
>
> 2. The court erred in failing to declare a mistrial where the state
> withheld material exculpatory and impeachment evidence, which
> deprived appellant of a fair trial, in violation of due process of law
> guaranteed by the Fifth and Fourteenth Amendments to the United
> States Constitution.

*Id.*  On December 11, 2001, the appellate court affirmed the judgment of the trial court.  The

appellate court refused to consider the merits of petitioner's claim of prosecutorial misconduct,

because such claim relied on evidence not readily apparent from the face of the record and would

properly be raised in a petition for post conviction relief pursuant to O.R.C. §2953.21.  *See id*.

Petitioner filed a motion for reconsideration with the state appellate court, which motion was denied

on January 29, 2002. Exhibit 3 to Motion to Dismiss.[2]  Petitioner filed a timely appeal of the

appellate court's decision to the Ohio Supreme Court in which he asserted the same propositions of

law.  Exhibit 19 to Return of Writ.  On May 15, 2002, the Ohio Supreme Court dismissed the appeal

---

[2]  In his motion for reconsideration, petitioner pointed out that a transcript of the
Gaudette tape had been attached to his motion for judgment of acquittal.  *See* Exhibit 7 to Return
of Writ. However, the state appellate court refused to consider tat transcript, as it had not been
properly authenticated.  *See* Exhibit 17 to Return of Writ.

4

as not involving any substantial constitutional question. Exhibit 21 to Return of Writ.[3] On January 13, 2004, petitioner filed a delayed petition for post conviction relief with the trial court. He asserted the ineffective assistance of counsel due to his attorney's failure to make a part of the trial record the transcript of Jennifer Gaudette's statement to police, which allegedly contained exculpatory information. Exhibit 25 to Return of Writ. On March 9, 2004, the trial court denied the petition as untimely. Exhibit 28 to Return of Writ. Petitioner filed a timely appeal of the trial court's decision to the Tenth District Court of Appeals. He asserted the following assignments of error:

> 1. Whether the evidence appellant relied upon to bring delayed post conviction motion in trial court was discoverable prior to the 180 day limitation of the post conviction statute Ohio Revised Code 2953.23(1)(a)?
>
> 2. Did the State, at trial, withhold material exculpatory to appellant, in violation of appellant's due process rights?
>
> The appellant states, "Yes."
>
> 3. Did trial counsel provide effective assistance at trial?
>
> The appellant states, "No."

Exhibit 29 to Return of Writ. On December 30, 2004, the appellate court affirmed the judgment of the trial court. Exhibit 31 to Return of Writ. Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court in which the same propositions of law were raised. Exhibit 32 to Return of Writ. However, on May 11, 2005, the Ohio Supreme Court declined jurisdiction to hear

---

[3] On March 19, 2002, represented by the Ohio Public Defender, petitioner apparently filed a second appeal to the Ohio Supreme Court; however, on May 23, 2002, the appeal was *sua sponte* dismissed for failure to prosecute. *See* Exhibits 22-24.

the case and dismissed the appeal as not involving any substantial constitutional question.  Exhibit 34 to Return of Writ.

On May 21, 2003, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.   The conviction was obtained where the evidence was not sufficient to meet the elements of the offense and where the subsequent jury verdict was contrary to the manifest weight of the evidence, all in violation of due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

> 2.   The court erred in failing to declare a mistrial where the state withheld material exculpatory and impeachment evidence, which deprived petitioner of a fair trial, in violation of due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

> 3.   Trial counsel's negligence rose to the level of ineffective assistance of counsel, a violation of the Sixth Amendment to the United States Constitution.

*See Motion for Time to Develop Claims*, Doc. #10.  It is the position of the respondent that claims one and two are without merit, and that claim three is procedurally defaulted.

## II.  CLAIM ONE

In claim one, petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction on murder, and that his murder conviction is against the manifest weight of the evidence.

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*,

6

703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  In the context of a claim alleging

a violation of due process, "sufficiency of the evidence" refers to the due process requirement that

there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find

each element of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319

(1979).  In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the

trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility

of the witnesses.  *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the

evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act

as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility

of witnesses to determine whether "the jury clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin*,

20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982).  Since a federal habeas

court does not function as an additional state appellate court, vested with the authority to conduct

such an exhaustive review, petitioner's claim that his conviction was against the manifest weight

of the evidence cannot be considered by this Court.

Petitioner does claim that there was constitutionally insufficient evidence to sustain his

murder conviction.  The state appellate court made the following relevant findings in rejecting

petitioner's insufficiency of the evidence claim:

> Defendant's first assignment of error asserts that defendant's
> conviction for murder is against both the sufficiency and the manifest
> weight of the evidence. Challenges to the sufficiency of the evidence
> and the manifest weight of the evidence are analytically distinct.
> *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. We will begin by

addressing defendant's sufficiency challenge to his attempted murder conviction.

In reviewing a claim that a criminal conviction is against the sufficiency of the evidence, an appellate court must determine whether the evidence presented at trial and viewed in a light most favorable to the prosecution would allow a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins, supra.*

In order to establish that defendant was guilty of murder, the state was required to show that defendant purposely caused the death of Raymond Brock. R.C. 2903.02(A). To this end, the state presented the testimony of Brock's friend, Carter, and Officer Babcock, both of whom testified that, when they spoke to Brock within minutes of when he was shot, he stated that defendant had shot him. Although defendant would have us consider other perhaps plausible interpretations of Carter's and Babcock's testimonies, our inquiry requires us to view their testimonies in the light most favorable to the prosecution. Viewed in such light, Carter's and Babcock's testimonies are plainly sufficient to establish that defendant caused Brock's death.

However, defendant contends that the state failed to present sufficient evidence that defendant acted with purposeful intent in causing Brock's death. Because intent lies within the mind of the perpetrator and, therefore, seldom can be proven by direct evidence, the law has long recognized that intent must be proven by looking to the facts and circumstances surrounding an event. *State v. Garner* (1995), 74 Ohio St.3d 49, 60. Further, "[a]n intent to kill may be presumed where the natural and probable consequence of the wrongful act is to produce death and such intent can be deduced from all surrounding facts, including the use of a deadly weapon." *State v. Williams* (Dec. 13, 1983), Franklin App. No. 83AP-479, unreported.

In the present case, the evidence shows that defendant shot Brock with a revolver following a fight with Brock's friend, Carter. In addition, Deputy Coroner, Dorothy Dean, M.D., testified that Brock had actually been shot twice, once in the chest and once in the buttock. Together, the fact that a gun was used to kill Brock, that Brock was shot twice, and that the shooting arose out of a dispute with Brock's friend, provide sufficient evidence to allow a jury to

reasonably find that defendant acted purposely in causing Brock's death.

***

[D]efendant argues that Carter's testimony should be given little weight, as his testimony that Brock told him that "Ease shot me" is contradicted by the testimony of Columbus Police Detective James McClary, who interviewed Carter at the scene following the shooting. According to McClary, Carter told him that Brock had only said that he had been shot. In fact, McClary testified that he specifically asked Carter if Brock had said anything else, and Carter responded, "No."

It is clear that Detective McClary's testimony casts some doubt on Neroy Carter's credibility. However, because Officer Babcock also testified that Brock told him that it was Easley who had shot him, the jury could reasonably have convicted defendant even if it chose to discount or disbelieve Carter's testimony....

Defendant's first assignment of error is overruled.

Exhibit 13 to Return of Writ.

These findings are entitled to a presumption of correctness pursuant to 28 U.S.C. §2254(e):

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to

clearly established federal law or was based on an unreasonable determination of the facts of record:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).  Upon review of the entire record, this Court concludes that petitioner has failed to establish that the state appellate court's decision is so unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor*, 529 U.S. 362 (2000).

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, *supra*, 443 U.S. at 319.  To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution.  *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319).  The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt."  *Id*. (quoting *Jackson*, at 326).  "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *Id*. (quoting *Jackson*, at 326).  For example the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior felony conviction.  *Id*.

For the reasons discussed by the state appellate court, this Court likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence is constitutionally sufficient to sustain petitioner's murder conviction.

Claim one is without merit.

### III.  CLAIM TWO

In claim two, petitioner asserts that he was denied due process because the trial court refused

to grant a mistrial based upon prosecutorial misconduct for failure to disclose exculpatory evidence.

The state appellate court made the following relevant findings regarding this claim:

> Defendant's second assignment of error asserts that the trial court
> erred in failing to declare a mistrial pursuant to *Brady v. Maryland*
> (1963), 373 U.S. 83, and its progeny when it became apparent that
> the state had failed to provide the defense with a copy of a taped
> police interview of Brock's fiancee, Jennifer Gaudette, which
> contained evidence favorable to defendant. In particular, defendant
> claims that the Gaudette tape contained testimony which would have
> cast further doubt on Neroy Carter's credibility, as the explanation of
> the events leading up to the shooting given by Gaudette on the tape
> is different than the version of events testified to by Carter.

> The record reveals that the Columbus Police interviewed Jennifer
> Gaudette shortly after the shooting and tape-recorded the interview.
> On April 26, 2000, defense counsel made a discovery request
> pursuant to Crim.R. 16, which included a request that the state
> produce any evidence in its possession that is favorable to defendant.
> The state did not produce the Gaudette tape in response to this
> discovery request. It was only after Carter had completed his
> testimony and been dismissed that the state provided defense counsel
> with a copy of the Gaudette tape late on the second day of trial.

> After taking time to review the Gaudette tape, defendant moved for
> a mistrial. The trial court denied defendant's motion for a mistrial.
> However, in considering defendant's motion for a mistrial, the trial
> court acknowledged that the Gaudette tape should have been
> provided to defendant as part of discovery, but concluded that any
> prejudice to defendant could be cured by allowing defendant to recall
> Carter for further cross-examination. In fact, the trial court stated that
> its ruling that defendant could recall Carter would include sending a
> sheriff's deputy to get Carter if necessary. We note, however, that it
> appears from the transcript that the trial court reached these
> conclusions based solely on defendant's assertions as to the contents
> of the tape and without having conducted its own review of the tape.

> After the close of his case-in-chief, defendant renewed his motion for
> a mistrial. The discussion which ensued regarding this motion reveals
> that Carter had been scheduled to appear for further testimony on that
> day, but failed to show up, and that further attempts to reach Carter

11

by phone had been unsuccessful. Nonetheless, and in spite of an earlier indication that it would send a deputy to get Carter if necessary, the trial court declined to send a deputy to get Carter, and denied defendant's motion for a mistrial.

Although defendant's assertions regarding the Gaudette tape create a colorable basis for reversing his conviction, an actual reversal must be based on an independent review of the Gaudette tape, and not upon defendant's assertions alone. Unfortunately, we are unable to review the contents of the Gaudette tape as neither the Gaudette tape nor a transcript of the tape is part of the record on appeal. The transcript reveals that at the close of the discussion regarding defendant's initial motion for a mistrial, defense counsel indicated that the Gaudette tape had been transcribed and that he intended to allow the state to review the transcript before proffering the transcript to the court. However, no such proffer ever occurred. In the absence of anything to review, defendant's second assignment of error must be overruled. We note, however, that a claim of ineffective assistance of counsel brought in an action for post-conviction relief would provide an appropriate forum in which to develop the contents of the Gaudette tape. *State v. Holloway* (Apr. 14, 1992), Franklin App. No. 91AP-365, unreported.

Defendant's second assignment of error is overruled.

Exhibit 13 to Return of Writ

Again, the state appellate court's decision is entitled to a presumption of correctness pursuant to 28 U.S.C. §2254(d), (e). However, where, as here, the state court does not resolve the claim on the basis of federal law, this Court conducts a *de novo* review.[4] *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), citing *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

In *Brady v. Maryland, supra*, the United States Supreme Court held that

the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is

---

[4] Respondent does not raise the issue of procedural default, which is an affirmative defense. *Trest v. Cain*, 522 U.S. 87 (1997); *Grey v. Netherland*, 518 U.S. 152, 165 (1996).

material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady v. Maryland*, *supra*, 373 U.S. at 86. Evidence is material

[i]f there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*United States v. Bagley*, 473 U.S. 667, 682 (1985).

[T]here is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

*Strickler v. Greene,* 527 U.S. 263, 281 (1999). "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *O'Guinn v. Dutton*, 88 F.3d 1409, 1418 (6th Cir. 1996), citing *United States v. Bagley, supra*.

The record fails to reflect that Jennifer Gaudette's statement to police constituted material exculpatory evidence under the standard set forth in *Brady* and its progeny. *See United States v. Jones*, 766 F.2d 994, 998 n.1 (6th Cir. 1985), *cert. denied*, 474 U.S. 1006 (1985)("In the absence of prejudice, even assuming a violation of *Brady*, reversal is not required."), citing *United States v. Campagnuolo*, 592 F.2d 852, 861 & n. 9 (5th Cir.1979). Gaudette told police that, after she came home from work, Brock and "Tike," *a.k.a*. Neroy Carter, *see Transcript*, at 215, told her that "E" (*i.e.*, petitioner), and an unnamed man with a pistol had come to the house looking for Carter due to a debt Carter owed the unnamed man.

Raymond said that him and... E were friends. That they were cool. And there was an argument between Tike and the other guy... they had been arguing for a couple of days....

***

13

I think it had something to do with Tike owing him some money.  I don't... I honestly don't know.

**

Raymond and them said the guy said he didn't want no... no beef... or whatever... and so... he didn't know if there would be no beef between them, and then he lifted up his shirt and showed em [sic] the gun.  Raymond told them to get away from our house... to leave... not to come near my house with my child in there.

***

Raymond and Tike told me that those guys had been drinking and getting high and that, um, Tike said that they'd gotten really bold since, um, they've all got there [sic] guns.

Exhibit 7 to Return of Writ.  .

Petitioner argues that Gaudette's statements show that Carter lied, and establish that petitioner was only a "passive observer."  Additionally, petitioner argues that Gaudette's statements show that Carter owed the unnamed man money, not petitioner, and that the confrontation leading up to the fatal shooting occurred some hours earlier, at the house, and not immediately prior to the shooting, as Carter had testified.  *Petition*, at 23-25.[5]  This Court is not persuaded by petitioner's arguments.  Further, even assuming that petitioner could have discredited Carter's testimony by use of the Gaudette tape, the critical evidence against petitioner was Brock's identification of petitioner as his killer to police shortly after the shooting.  Eric Babcock, of the Columbus Police Department said:

[Brock] stated to me that he had been shot.

_____

[5] Jennifer Gaudette was called as a prosecution witness.  *See Transcript*, Vol. I, at 209-223; Vol. II, at 6-18.  However, she was not questioned about the statements at issue here.  She did not witness the shooting.  *See id.*

14

***

... My next question was exactly who did this to him, who shot him.

***

Q.  The answer that he gave you...  was?

A.  That "Ease did it."

***

At first I didn't quite understand him using the verb of Ease referring to a person.  I was unfamiliar with his utilization of street vernacular. I quite honestly was confused as to what he meant by the term, "Ease did it."  I had to ask several times.  Mr. Brock, at which time understood that I didn't exactly understand the term Ease as the way he was referring or using it, and he finally stated, "Easley did it. Easley shot me."

***

... My opinion was that he was lucid, he was very adamant to me that he wanted me to understand exactly who did it.  Again, I feel that he was very adamant in his words to me.  He was a little bit agitated that I did not at first understand exactly what, you know, like I said earlier, the term Ease, term Ease meant....  He wanted me to understand exactly....

*Transcript*, at 75-80.  Nothing in the Gaudette tape would have affected such evidence of guilt.

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Favorable evidence is material for *Brady* purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002)("The prejudice (or materiality) element of a *Brady* violation is established if there is a reasonable probability of a

> different outcome of the trial had the *Brady* material been available.")
> For purposes of determining reasonable probability, "[t]he question
> is not whether the defendant would more likely than not have
> received a different verdict with the evidence, but whether in its
> absence he received a fair trial, understood as a trial resulting in a
> verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434,
> 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

*Castleberry v. Brigano*, 349 F.3d 286, 291 (6th Cir. 2003).  Petitioner has failed to meet this standard

here.

Claim two is without merit.


## IV.  CLAIM THREE

In claim three, petitioner asserts that he was denied the effective assistance of trial counsel

because his attorney failed to properly authenticate or make the transcription of Gaudette's

statements to police a part of the record for purposes of appeal.  It is the position of the respondent

that this claim is procedurally defaulted.

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal courts,

a state criminal defendant with federal constitutional claims is required to present those claims to

the state courts for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an

avenue open to him by which he may present his claims, then his petition is subject to dismissal for

failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard*

*v. Connor*, 404 U.S. 270, 275-76 (1971).  But if, because of a procedural default, the petitioner can

no longer present his claims to the state courts, then he has also waived those claims for purposes

of federal habeas corpus review, unless he can demonstrate both cause for the procedural default,

as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Because petitioner's claim relies on matters not readily apparent from the face of the record, such claim would be properly raised in a petition for post conviction relief pursuant to O.R.C. §2953.21. Petitioner presented his claim of ineffective assistance of counsel in his January 13, 2004, delayed post conviction action; however, the state appellate court explicitly dismissed such action as untimely:

> Defendant-appellant, Vance A. Easley appeals from the March 9, 2004 judgment of the Franklin County Court of Common Pleas dismissing his January 13, 2004 petition for post-conviction relief.

17

For the following reasons, we affirm that judgment.

On December 6, 2000, a jury found appellant guilty of one count of murder with a weapon specification. Also on December 6, 2000, the trial court found appellant guilty of having a weapon while under disability, an additional charge for which appellant had waived his right to trial by jury. The specific facts giving rise to appellant's convictions were set out in detail by this court in *State v. Easley* (Dec. 11, 2001), 10th Dist. No. 01AP-31, appeal not accepted, 95 Ohio St.3d 1460, 2002-Ohio-2230, 767 N.E.2d 1178, wherein we affirmed appellant's convictions.

On January 13, 2004, appellant filed his petition for post-conviction relief. The stated bases for the petition were (1) that appellant's trial counsel had been ineffective for failing to make part of the record at trial a transcript of the tape-recorded interview of the decedent's girlfriend conducted by police following the shooting, and (2) that the state withheld the interview tape, which appellant characterizes as exculpatory evidence, in violation of the *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. According to the petition, appellant's trial counsel first received the tape during the witness' trial testimony, had his office staff transcribe the tape, and stated an intention to make the transcript a part of the record, but ultimately failed to do so.

\*\*\*

The trial court dismissed appellant's petition on the ground that the same had been untimely filed, and could not nevertheless be considered because appellant had failed to meet either prong of R.C. 2953.23(A)(1). On appeal, appellant asserts the following assignments of error, which we shall treat as such though appellant denominates them in his brief as "propositions of law":

*Proposition of Law # 1:* Whether the evidence appellant relied upon to bring delayed post-conviction motion in trial court was discoverable prior to the 180 day limitation of the post conviction statute Ohio Revised Code 2953.23(1)(a)?

The appellant says, "No".

18

*Proposition of Law # 2:* Did the State, at trial, withhold material exculpatory to appellant, in violation of appellant's due process rights?

The appellant states, "Yes".

*Proposition of Law # 3:* Did trial counsel provide effective assistance at trial?

The appellant states, "No".

Section 2953.21 of the Ohio Revised Code makes available post-conviction relief to persons subject of judgments of conviction or delinquency. It provides, in pertinent part:

Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

[A] petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal.

R.C. 2953.21(A)(1) and (2).

Pursuant to R.C. 2953.21(A)(2), appellant was required to file his motion for post-conviction relief within 180 days of the date upon which the trial transcript was filed with this court in the case of *State v. Easley,* supra. The record reflects that the trial court correctly found that appellant's motion was filed long after the expiration of

19

that 180-day period. A trial court's decision that a motion for post-conviction relief is untimely renders unnecessary any further inquiry into its merits. *State v. Beaver* (1998), 131 Ohio App.3d 458, 464, 722 N.E.2d 1046; *State ex rel. Kimbrough v. Greene,* 98 Ohio St.3d 116, 2002-Ohio-7042, 781 N.E.2d 155.

However, section 2953.23(A) of the Ohio Revised Code provides that the trial court may nonetheless consider an untimely motion for postconviction relief if two enumerated circumstances apply. Specifically, that statute states:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:
(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

If a petition for post-conviction relief is untimely filed, a trial court has jurisdiction to entertain the petition only if the limited conditions of R.C. 2953.23(A) are satisfied. *State v. Ayala* (Nov. 10, 1998), 10th Dist. No. 98AP-349; *State v. Hanks* (June 25, 1998), 10th Dist. No. 98AP-70.

We begin by discussing appellant's first assignment of error, in which appellant challenges the trial court's finding that his petition failed to demonstrate that he was unavoidably prevented from discovery of the facts upon which he based his claim of ineffective assistance of trial counsel. A review of appellant's petition for post-conviction relief reveals that appellant's counsel had possession of the witness interview tape and of a transcript of it prior to the conclusion of appellant's trial. In this case, appellant has failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering the substance of the taped interview that counsel failed to incorporate into the record at trial. Thus, appellant does not satisfy the condition in R.C. 2953.23(A)(1)(a) that he was "unavoidably prevented" from timely discovering facts in support of his claim of ineffective assistance of counsel. Accordingly, appellant's first assignment of error is overruled.

In his second and third assignments of error, he challenges the trial court's conclusion that he failed to demonstrate by clear and convincing evidence that, but for constitutional errors at trial, no reasonable factfinder would have found him guilty of murder. He alleges violation of his rights to due process and to effective assistance of counsel.

To warrant an evidentiary hearing on a petition for post-conviction relief, a petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. R.C. 2953.21(C); *State v. Campbell,* 10th Dist. No. 03AP-147, 2003-Ohio-6305, at ¶ 15. A trial court has a statutorily imposed duty to ensure a petitioner presents evidence sufficient to warrant a hearing. Ibid. The evidence must show that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." Ibid., quoting R.C. 2953.21(A)(1) and *State v. Calhoun* (1999), 86 Ohio St.3d 279, 282-283, 714 N.E.2d 905. Pursuant to R.C. 2953.21(C), a petition for post-conviction relief may be denied by a trial court without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun,* supra, at paragraph two of the syllabus.

We agree with the trial court that appellant failed to meet his initial burden of providing with his petition evidence demonstrating a

21

> cognizable claim of constitutional error. Thus, appellant has failed to
> satisfy the condition in R.C. 2953.23(A)(1)(b) that he would not have
> been convicted of murder but for constitutional error at trial.
> Accordingly, appellant's second and third assignments of errors are
> overruled.

Exhibit 31 to Return of Writ. This Court deems the first and second parts of the *Maupin* test to have

been met.

Next, this Court must decide whether the procedural rules at issue constitute adequate and

independent bases upon which to foreclose review of petitioner's federal constitutional claims. This

task requires the Court to balance the state's interests behind each procedural rule against the federal

interest in reviewing federal claims. *See Maupin v. Smith*, 785 F.2d at 138. Under this analysis, the

procedural rules barring petitioner's claims for relief constitute adequate and independent state

grounds for denying relief. The state courts must be given a full and fair opportunity to remedy

alleged constitutional defects. The time limitations for filing appeals in post conviction proceedings

and the requirement that all available claims be asserted in the first such proceeding serve the state's

interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.

This Court concludes that petitioner has waived his right to present claim three for federal

habeas corpus review. Petitioner can still secure review of this claim on the merits if he

demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice

from the constitutional violation that he alleges. Petitioner has failed to demonstrate either cause

for his procedural default or actual prejudice resulting from the alleged constitutional violation.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an

extraordinary case, where a constitutional violation has probably resulted in the conviction of one

who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.  After review of the record, the Court does not deem this to be such a case.


## V.

Based upon all of the foregoing, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.


If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

23

September 15, 2005                                  _____s/Norah McCann King_____
                                                          Norah McCann King
                                                    United States Magistrate Judge